IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ALBERT WIRTH, and Florence T. WIRTH,<br><br>Plaintiffs,<br><br><br>vs.<br><br><br>ROGER E. TAYLOR, et al.,<br><br>Defendant.<br>_____<br>ANNETTE KAY DONNELL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ROGER E. TAYLOR, et al.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 2:09-CV-127 TS |

This matter is before the Court on a number of Motions, including: a Motion for

Summary Judgment filed by Defendants Franklin Forbes Advisors, Inc., LBS Fund, L.P. and

LBS Advisors, Inc., and LBS Management, Inc. (collectively the "LBS Defendants"); (2) a

Motion for Partial Summary Judgment filed by Plaintiff Annette Kay Donnell ("Donnell") and

AK Limitless, LLC (collectively the "Donnell Plaintiffs") against Jeffrey Roylance ("Roylance")

and Summit Capital Advisors, Inc. ("Summit"); a Cross Motion for Summary Judgment filed by Roylance and Summit; a Motion for Partial Summary Judgment against Roger Taylor ("Taylor"); and a Motion to Strike.

For the reasons discussed below, the Court will grant the LBS Defendants' Motion for Summary Judgment, deny Plaintiffs' Motion for Summary Judgment against Roylance and Summit, grant in part and deny in part the Motion for Summary Judgment filed by Roylance and Summit, grant in part and deny in part Plaintiffs' Motion for Partial Summary Judgment against Taylor, and deny as moot the Motion to Strike.

## I. MOTION TO STRIKE

Defendants Roylance and Summit seek to strike the Declaration of Wayne Klein submitted by Plaintiffs in support of their Motion for Summary Judgment. Klein is the receiver of Ascendus Capital Management ("Ascendus") and FFCF Investors, LLC.

Defendants Roylance and Summit argue that Klein is an expert witness and, since Plaintiffs failed to disclose him as an expert and provide an expert report, his Declaration should be stricken. In support of their argument, Defendants point to a previous order from the Magistrate Judge preventing Plaintiffs from relying on undisclosed expert testimony.[1] Plaintiffs argue that Klein is not an expert and that, if he is, the failure to disclose is harmless and substantially justified.

---

[1] *See* Docket No. 276.

The Court need not resolve the issue of whether Klein is an expert witness.  Klein's Declaration does little to illuminate the issues in dispute here.  Therefore, the Court need not consider Klein's declaration and this Motion is moot.

At oral argument, the parties discussed the use of Klein as a witness at trial.  That issue is not currently before the Court and will only be addressed through a motion in limine filed by one of the parties.  The Court notes, however, that Plaintiffs did not object to the Magistrate Judge's order preventing them from relying on undisclosed expert testimony.  Therefore, that order remains and any testimony from Klein at trial would be limited to fact testimony.

## II. STATEMENT OF FACTS

Many of the facts of this case are in dispute.  Below is a brief recitation of the facts that are relevant to the pending summary judgment motions.

In 2003, Plaintiff Annette Kay Donnell learned of investment opportunities involving Defendant Roger Taylor ("Taylor").[2]  Plaintiff eventually invested a large amount of money with Taylor, which was initially placed with Ascendus Capital.[3]  In 2006, Richard Smith ("Smith") spoke to Donnell about moving her money from Ascendus to Franklin Forbes Composite Funds ("FFCF").[4]  FFCF was to be managed by Franklin Forbes Advisors, now known as LBS Advisors, Inc.

---

[2]Docket No. 288, ¶ 1.

[3]*Id*. ¶ 4.

[4]*Id*. ¶ 8; Docket No. 287, Ex. I (Dep. of Richard Smith Vol. II at 389:2-391:17).  It should be noted that Mr. Smith has disputed much of his deposition testimony and has provided a conflicting affidavit.  Docket No. 315, Exs. A & B.

Based on the representations made by Smith, Donnell agreed to move her entire Ascendus investment, which she believed was valued at approximately $1.5 million, to FFCF.[5]  Donnell later invested another $401,000 into FFCF.[6]  Plaintiff Donnell eventually lost a substantial portion of her investment.[7]

Smith has testified that he believed that he was the chief operating officer of Summit Capital Advisors Inc. ("Summit")[8] and that he was paid by Summit for his actions in recruiting Donnell to move her money to FFCF.[9]

Defendants ("Summit") and Jeffrey Roylance ("Roylance") had a consulting agreement with Franklin Forbes Advisors, Inc., whereby Summit and Roylance sought to bring investors to Franklin Forbes Advisors, Inc., which later became LBS Advisors, Inc.[10]  Summit, in turn, had a sub-advisor agreement with Roger Taylor, under which Taylor was to bring investors to Summit to be introduced to LBS.[11]  LBS paid Summit for these referrals.[12]  Summit then paid Taylor 66%

---

[5]Docket No. 288, ¶¶ 12-13.

[6]*Id*. ¶ 14.

[7]*Id*. ¶ 29.

[8]Docket No. 287, Ex. I (Dep. of Richard Smith Vol. I at 89:11-90:2).

[9]*Id*., Ex. I (Dep. of Richard Smith Vol. II at 391:18-392:1).

[10]Docket No. 268, Ex. A; *id*., Ex. B at 35:15-21; *id*. at 83:19-84:16; *id*. at 132:13-18; *id*., Ex. C at 34:15-35:5; *id*., Ex. D at 17:23-18:16.

[11]*Id*., Ex. L; *id*., Ex. D at 57:13-58:1; *id*., Ex. F at 20:2-21:21 *id*. at 23:8-12.

[12]*Id*., Ex. D. at 127:20-23.

of that money, but Taylor told Summit to pay half of that amount to Smith.[13]  Summit complied with this request.[14]

LBS placed the funds it received with an entity known as GJB Enterprises.

As stated, Donnell invested in FFCF.  FFCF became a limited partner in LBS Fund.  As a limited partner of LBS Fund, FFCF made various capital contributions and withdrawals.  All of FFCF's debits and credits were detailed in monthly statements provided to FFCF.  In July 2008, FFCF faxed LBS fund a document requesting a withdrawal of FFCF's entire remaining account. On or about August 1, 2008, LBS Fund issued a check to FFCF for $81,849.52, representing the entire remaining balance of FFCF's capital account.  In total, FFCF deposited $8,027,550.00 into its LBS Fund capital account and withdrew—through distributions or assignment—$9,239,745.63, realizing $1,212,195.62 in earnings during its time of investment with LBS Fund.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[15]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[16]  The

---

[13]*Id.*, Ex. D at 122:19-125:17.

[14]*Id.*, Ex. D. at 128:2-8.

[15]FED. R. CIV. P. 56(a).

[16]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

Court is required to construe all facts and reasonable inferences in the light most favorable to the

nonmoving party.[17]

## IV.  DISCUSSION

A.    LBS DEFENDANTS

The Second Amended Complaint brings a number of claims against the LBS Defendants.

Plaintiffs bring claims against the LBS Defendant for fraud, breach of contract, breach of

fiduciary duty, conversion, accounting, unjust enrichment, negligence, state and federal securities

fraud, and securities control person liability.  The LBS Defendants seek judgment on all of these

claims.

### 1.    Fraud

[I]n order to prevail on a claim of fraud, all the elements of fraud must be
established by clear and convincing evidence.  Those elements are: (1) a
representation; (2) concerning a presently existing material fact; (3) which was
false; (4) which the representer either (a) knew to be false, or (b) made recklessly,
knowing that he had insufficient knowledge on which to base such representation;
(5) for the purpose of inducing the other party to act upon it; (6) that the other
party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it;
(8) and was thereby induced to act; (9) to his injury and damage.[18]

The LBS Defendants argue that summary judgment is appropriate on Plaintiffs' fraud

claim because none of the LBS Defendants had any communication with the Donnell Plaintiffs,

much less communications amounting to a misrepresentation concerning a presently existing

---

[17]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);
*Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[18]*Secor v. Knight*, 716 P.2d 790, 794 (Utah 1986) (citations omitted).

material fact.  The LBS Defendants also argue that, since LBS Fund repaid FFCF's entire

investment plus profits, Donnell has failed to establish damages.

Plaintiffs argue that the LBS Defendants entered into a consulting agreement with

Summit and Roylance and, therefore, Summit and Roylance were agents of the LBS Defendants.

Plaintiffs further assert that the LBS Defendants were aware that Taylor was a sub-advisor of

Summit, thus making him an agent of LBS as well.  Plaintiffs argue that LBS provided Summit,

Roylance, and Taylor with marketing information that was then presented to potential investors.

Plaintiffs allege this marketing information was incorrect and was relied upon by investors,

including Donnell, when making the decision to invest.  Plaintiffs argue that the LBS Defendants

knew that investors would rely on this information.  Finally, Plaintiffs state that they were

damaged by their reliance on these materials.

Plaintiffs have presented evidence that Ms. Donnell met with Richard Smith, who spoke

to her about investing in Franklin Ford Composite Fund.[19]  Ms. Donnell further states that Mr.

Smith provided her with marketing materials during this presentation.[20]  Ms. Donnell states that

she relied on the representations of Mr. Smith when deciding to invest into FFCF and she

explains the damages that allegedly came from this reliance.[21]

The Court finds that the LBS Defendants are entitled to summary judgment on Plaintiffs'

fraud claim.  There is no evidence that any of the LBS Defendants made any representations to

---

[19]Docket No. 288, ¶ 8.

[20]*Id*.

[21]*Id*. ¶¶ 14, 16, 26-29.

Plaintiffs.  While Plaintiffs point to the marketing materials prepared by LBS that were shown to Donnell by Smith, this link is simply too attenuated to survive summary judgment.  There is nothing to suggest that it was foreseeable that these materials would come into the hands of Smith or that he would show them to Donnell.  Further, the Court finds that Plaintiffs have failed to demonstrate that any damages flow from the actions of the LBS Defendants.  It is undisputed that LBS reimbursed FFCF for the funds that FFCF invested in LBS.  In fact, FFCF realized earnings with its investment in LBS.  Therefore, Plaintiffs cannot trace any injury to LBS.  Rather, any loss of investment by Plaintiffs would be traceable to FFCF.

> 2.     *Securities Claims*

> > a.     *Primary Liability*

Section 10(b) of the Exchange Act prohibits fraudulent conduct in connection with the offer, purchase, and sale of securities.[22]   In order to establish a violation of Section 10(b) and Rule 10b-5[23] thereunder, Plaintiffs must show: (1) a material misrepresentation or omission by the defendant; (2) scienter (3) a connection between the misrepresentation or omission and the purchase or sale of securities; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.[24]

Utah Code Ann. § 61-1-1 states:

> It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:

---

[22]*See* 15 U.S.C. § 78j(b).

[23]17 C.F.R. § 240.10b-5.

[24]*Stoneridge Invest. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

8

(1) employ any device, scheme, or artifice to defraud;
(2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
(3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

For the same reasons set forth above in relation to Plaintiffs' fraud claim, Plaintiffs cannot prevail on their securities claims against the LBS Defendant. There is no evidence that the LBS Defendants made misrepresentations or omissions to Plaintiffs or that Plaintiffs suffered any damages as a result of those alleged misrepresentations or omissions.

        b.    *Control Person and Material Aid Liability*

In addition to Plaintiffs' primary liability claims, Plaintiffs also claim control person liability. 15 U.S.C. § 78t(a) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Similarly, Utah Code Ann. § 61-1-22(4)(a) states:

Every person who directly or indirectly controls a seller or buyer liable under Subsection (1), every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase are also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

To establish control person liability "the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person."[25]

There is evidence to support the conclusion that one of the other Defendants committed a primary violation of the securities laws. Specifically, Ms. Donnell's Declaration provides evidence that Richard Smith made false representations in an attempt to persuade Ms. Donnell to invest in the Franklin Forbes Composite Fund. However, there is insufficient evidence that the LBS Defendants had control over Mr. Smith. As stated, Summit and Roylance had a consulting agreement with LBS Advisors, Inc. Summit, in turn, had a sub-advisor agreement with Roger Taylor. Taylor directed Summit to pay half of the amount he was to receive for his services to Smith. While, as discussed below, this may present evidence that Summit controlled Smith, the link between the LBS Defendants and Smith is simply too attenuated to support a finding of control person liability. Therefore, summary judgment is proper on this ground.

3.    *Breach of Contract*

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[26]

---

[25]*Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998).

[26]*Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 391 (Utah 2001) (citing *Nuttall v. Berntson*, 30 P.2d 738, 741 (Utah 1934)).

Plaintiffs' breach of contract claim against the LBS Defendnats fails for many of the same reasons Plaintiffs' other claims fail.  Simply put, there is no evidence of a contract between Plaintiffs and the LBS Defendants and, even if such a contract existed, Plaintiffs have failed to establish damages.  As stated, FFCF received a full return of its principal investment, plus interest, from LBS fund.  Therefore, summary judgment is appropriate.

### 4.      Unjust Enrichment

"A proper claim for unjust enrichment requires that the party show (1) a benefit conferred on one person by another, (2) an appreciation or knowledge by the conferee of the benefit, and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[27]

Here, no benefit was conferred from Plaintiffs to the LBS Defendants.  Further, there was no acceptance or retention by the LBS Defendants of any alleged benefit.  LBS Fund fully repaid FFCF's investment.  Therefore, summary judgment is appropriate.

### 5.      Conversion

"A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[28]

Here, the Donnell Plaintiffs have failed to demonstrate that the LBS Defendants interfered with Plaintiffs' possessory interest in any property.  At most, Plaintiffs have shown that they invested in FFCF, which in turn was invested in LBS Fund.  However, it is undisputed

---

[27] *Smith v. Grand Canyon Expeditions Co.*, 84 P.3d 1154, 1162 (Utah 2003).

[28] *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958).

11

that LBS Fund returned all of FFCF's principal, plus earnings.  Therefore, the LBS Defendants

did not convert any of Plaintiffs' property.  Any claim for conversion would be against FFCF.

  *6.  Breach of Fiduciary Duty*

  The LBS Defendants assert that there was no fiduciary duty between themselves and

Plaintiffs.  Breach of fiduciary duty requires the existence of a fiduciary relationship.  There are

generally two types of fiduciary relationships:

> (1) [T]hose specifically created by contract such as principal and agent, attorney
> and client, and trustee and cestui que trust, for example, and those created by
> formal legal proceedings such as guardian and/or conservator and ward, and
> executor or administrator of an estate, among others, and (2) [T]hose implied in
> law due to the factual situation surrounding the involved transactions and the
> relationship of the parties to each other and to the questioned transactions.[29]

  If any fiduciary relationship exists here, it would be the second type.  The Utah Supreme

Court has stated that a fiduciary relationship may be found "'when one party, having gained the

trust and confidence of another exercises extraordinary influence over the other party.'"[30]

> There is no invariable rule which determines the existence of a fiduciary
> relationship, but it is manifest in all the decisions that there must be not only
> confidence of the one in the other, but there must exist a certain inequality,
> dependence, weakness of age, of mental strength, business intelligence,
> knowledge of the facts involved, or other conditions, giving to one advantage over
> the other.[31]

---

[29]*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1332 (Utah 1990)
(citation omitted).

[30]*State Bank of S. Utah v. Troy Hygro Sys., Inc.*, 894 P.2d 1270, 1275 (Utah Ct. App.
1995) (quoting *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985)).

[31]*First Sec. Bank of Utah N.A.*, 786 P.2d at 1333 (citation omitted).

Here, there is no evidence of a fiduciary relationship with Plaintiffs and the LBS Defendants. Even if a fiduciary relationship existed, Plaintiffs cannot point to any damages resulting from a breach of that fiduciary duty because FFCF received a full return of its principal, plus earnings. Therefore, summary judgment is appropriate on this claim.

 7.     *Negligence*

To prevail on a negligence claim, a plaintiff must establish four essential elements: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages.[32]

Plaintiffs have failed to present evidence of a duty between the LBS Defendants and Plaintiff. Further, Plaintiffs have failed to show any proof of damages in relation to any alleged duty owed by the LBS Defendants. Therefore, this claim too must fail.

 8.     *Accounting*

For the same reasons set forth above, Plaintiffs' claim for an accounting must fail. Plaintiffs have failed to present any evidence that the LBS Defendants owe them any money. Therefore, summary judgment will be granted on this ground as well.

B.     ROYLANCE AND SUMMIT

Plaintiffs also bring a number of claims against Defendants Roylance and Summit. The parties have filed cross Motions for Summary Judgment seeking judgment on these claims.

---

[32]*Thurston v. Workers Comp. Fund of Utah*, 83 P.3d 391, 394-95 (Utah Ct. App. 2003).

1.      *Securities Claims*

Plaintiffs argue that Summit and Roylance are liable for violations of both state and federal securities laws.  Defendants assert that Summit and Roylance cannot be held liable under these provisions.

a.      *Control Person and Material Aid Liability*

Plaintiffs argue that Roylance is liable because he had control over individuals and entities who committed primary violations of the securities laws and materially aided those individuals and entities.  Defendants Summit and Roylance argue, however, that they were not control persons.

15 U.S.C. § 78t(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Similarly, Utah Code Ann. § 61-1-22(4)(a) states:

> Every person who directly or indirectly controls a seller or buyer liable under Subsection (1), every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase are also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

To establish control person liability "the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person."[33]

Plaintiffs have presented evidence to establish primary violations of the securities laws. Plaintiffs have also established evidence from which a fact-finder could find that Summit and Roylance controlled the alleged primary violator.  Specifically, the evidence shows that Summit and Roylance had an agreement with LBS, whereby they were supposed to bring investors to LBS.  Summit, in turn, had a sub-advisor agreement with Roger Taylor under which Taylor was to bring investors to Summit.  Taylor then directed that a share of the money he was paid for his services was to be paid to Richard Smith.  There is also evidence suggesting that Smith had a managerial role in Summit.  From this, a finder of fact could infer that Defendants Summit and Roylance exercised control over those individuals who allegedly committed primary violations of the securities laws, particularly Smith.

This evidence, however, is largely in dispute.  Therefore, the Court finds that summary judgment in favor of either party is improper and both Motions for Summary Judgment will be denied on this ground.

   *b.*  *Primary Liability*

In addition to control person and material aid liability, Plaintiffs argue that Summit and Roylance committed primary violations of both state and federal securities laws by engaging in

---

[33]*Maher*, 144 F.3d at 1305.

15

fraud in connection with the sale of securities.  Defendants argue, however, that they are entitled to summary judgment on this claim because they never met with or spoke to Plaintiffs.

Section 10(b) of the Exchange Act prohibits fraudulent conduct in connection with the offer, purchase, and sale of securities.[34]  In order to establish a violation of Section 10(b) and Rule 10b-5[35] thereunder, Plaintiffs must show: (1) a material misrepresentation or omission by the defendant; (2) scienter (3) a connection between the misrepresentation or omission and the purchase or sale of securities; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.[36]

Utah Code Ann. § 61-1-1 states:

It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:
(1) employ any device, scheme, or artifice to defraud;
(2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
(3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Roylance and Summit argue that Plaintiffs' claims of direct violations of the securities laws fail because Roylance and Summit did not make any statements to Plaintiffs.  Defendants point to the recent Supreme Court decision of *Janus Capital Group, Inc. v. First Derivative Traders*,[37] to support its argument.  In *Janus*, the Court addressed liability under Rule 10b-5,

---

[34]*See* 15 U.S.C. § 78j(b).

[35]17 C.F.R. § 240.10b-5.

[36]*Stoneridge Invest. Partners, LLC*, 552 U.S. at 157.

[37]131 S.Ct. 2296 (2011).

which makes it unlawful for any person to "make" any untrue statement of a material fact in connection with the purchase or sale of securities.  The Court held that "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with the ultimate authority over the statement, including its content and how to communicate it."[38]  The Court refused to "expand liability beyond the person or entity that ultimately has authority over a false statement."[39]

Plaintiffs' precise theory of Summit and Roylance's primary violations is difficult to decipher.  In their Reply brief, Plaintiffs continue to assert that Summit and Roylance can be held liable under a control person liability theory.  In this regard, *Janus* helps their case.[40]  As set forth above, there are genuine issues of material fact on Plaintiffs' control person liability claims and that claim survives summary judgment.

Plaintiffs also assert that Summit and Roylance engaged in primary violations of the securities laws.  In support, Plaintiffs point to a series of meetings where Roylance discussed investments in FFCF.  The problem with this theory, however, is that Donnell was not in attendance at these meetings.  Therefore, Plaintiff cannot claim any reliance or loss causation arising out of any alleged misrepresentations or omissions made at these meetings.  Such claims would naturally belong to those who actually attended the meetings.  Thus, Plaintiffs' claims against Summit and Roylance for primary violations of Section 10(b) and Rule 10b-5 fail.  Therefore, the Court will grant Summit and Roylance summary judgment on this claim.

---

[38]*Id*. at 2302.

[39]*Id*. at 2303.

[40]*Id*. at 2304 (rejecting broad construction of Rule 10b-5 because Congress had established liability for control persons).

Plaintiffs further argue that their claims under the Utah Uniform Securities Act remain because Utah law allows for a private right of action against aiders and abettors.  The Utah Act is modeled after the Uniform Securities Act.[41]  As stated above, Utah Code Ann. § 61-1-22(4)(a) states:

> Every person who directly or indirectly controls a seller or buyer liable under Subsection (1), every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase are also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Courts interpreting similar provisions have found that such provisions create two types of liability for securities fraud: control person liability and aiding and abetting liability.[42]  Plaintiffs have provided sufficient information to survive summary judgment on a claim for aiding and abetting under Utah law.  Therefore, Summary Judgment is inappropriate on Plaintiffs' claims for aider and abettor liability under the Utah Uniform Securities Act.

---

[41]*Gohler v. Wood*, 919 P.2d 561, 566 (Utah 1996).

[42]*See Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1325 (8th Cir. 1991) (interpreting Arkansas law); *see also Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1122 n.10 (N.D. Okla. 2003) (discussing Oklahoma law).

c.      *Broker-Dealer Liability*

A person may sue a person who transacts business in Utah as a broker-dealer without a license.[43]  A broker-dealer "means a person engaged in the business of effecting transactions in securities for the account of others or for the person's own account."[44]

It is undisputed that Summit and Roylance did not have a license to act as a broker-dealer. Defendants argue that they are entitled to summary judgment on this claim because they did not sell any securities to Plaintiffs.  This argument, however, ignores Plaintiffs' claim for control person liability under Utah Code Ann. § 61-1-22(4)(a).  That provision provides for liability against those who directly or indirectly control a seller liable under § 61-1-22(1).  Section 61-1-22(1), in turn, applies to a person who sells a security in violation of § 61-1-3(1).  That provision states that "[i]t is unlawful for a person to transact business in this state as a broker-dealer or agent unless the person is licensed under this chapter."[45]  Therefore, Defendants are not entitled to summary judgment on this claim.  Further, for the reasons set forth above in relation to Plaintiffs' control person liability claim, Plaintiffs are not entitled to summary judgment on this claim either.

---

[43]Utah Code Ann. §§ 61-1-22(1)(a) & -3(1).

[44]*Id*. § 61-1-13(1)(c).

[45]*Id*. § 61-1-3(1).

19

*2.      Unjust Enrichment and Conversion*

Defendant Summit moves for summary judgment on Plaintiffs' unjust enrichment and conversion claims, arguing that it did not receive anything from Plaintiffs.  Plaintiffs, however, argue that they are entitled to summary judgment on these claims.

"A proper claim for unjust enrichment requires that the party show (1) a benefit conferred on one person by another, (2) an appreciation or knowledge by the conferee of the benefit, and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[46]  "A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[47]

The Court finds that there are genuine issues of material fact which prevent summary judgment in favor of either party on this claim.

*4.      Breach of Fiduciary Duty*

Plaintiffs argue that they are entitled to summary judgment because Summit and Roylance breached their fiduciary duty to Donnell.  Defendants, however, contend that they are entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim, arguing that there was no such duty.

Breach of fiduciary duty requires the existence of a fiduciary relationship.  There are generally two types of fiduciary relationships:

---

[46]*Smith*, 84 P.3d at 1162.

[47]*Allred*, 328 P.2d at 728.

(1) [T]hose specifically created by contract such as principal and agent, attorney and client, and trustee and cestui que trust, for example, and those created by formal legal proceedings such as guardian and/or conservator and ward, and executor or administrator of an estate, among others, and (2) [T]hose implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions.[48]

Plaintiffs argue that a fiduciary duty is imposed on Summit and Roylance by statute, pointing to the Investment Advisors Act of 1940.  However, Plaintiffs have not brought claims under that Act.  Therefore, its application here is questionable.  Further, Summit and Roylance were not Plaintiffs' investment advisors. Therefore, any fiduciary duty based on their role as investment advisors was owed to individuals other that Plaintiffs and any such claim for a violation of that duty would belong to those individuals, not Plaintiffs.

Plaintiffs further argue that a fiduciary relationship may be found under the common law. The Utah Supreme Court has stated that a fiduciary relationship may be found "'when one party, having gained the trust and confidence of another exercises extraordinary influence over the other party.'"[49]

There is no invariable rule which determines the existence of a fiduciary relationship, but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other.[50]

---

[48] *First Sec. Bank of Utah N.A.*, 786 P.2d at 1332 (citation omitted).

[49] *State Bank of S. Utah*, 894 P.2d at 1275 (quoting *Von Hake*, 705 P.2d at 769).

[50] *First Sec. Bank of Utah N.A.*, 786 P.2d at 1333 (citation omitted).

21

Here, there are insufficient facts to support Plaintiffs' claims that Summit and Roylance owed them a fiduciary duty.  It is difficult to see how Roylance and Summit gained the confidence and trust of Plaintiffs where they never met with or spoke to Plaintiffs.  Therefore, the Court finds that Defendants are entitled to summary judgment on this claim.

C.    TAYLOR

Plaintiffs also bring a number of claims against Roger Taylor on which they seek summary judgment.  Talyor is proceeding pro se in this matter and has responded to Plaintiffs' Motion for Partial Summary Judgment.  As Taylor is proceeding pro se, the Court will construe his filings liberally.[51]

    1.    Fraud

Plaintiffs bring claims against Taylor for fraudulent nondisclosure and fraudulent concealment.  A party is liable for fraudulent nondisclosure if he "omi[ts] . . . a material fact when there is a duty to disclose for the purpose of inducing action on the part of the other party, with actual, justifiable reliance resulting in damage to that party."[52]  "[A] claim for fraudulent nondisclosure rests on three elements: (1) a legal duty to communicate, (2) undisclosed material information, and (3) a showing that the information was known to the party who failed to disclose."[53]  The elements for fraudulent concealment are the same.[54]

---

[51]*Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

[52]*Taylor v. Gasor, Inc.*, 607 P.3d 293, 294 (Utah 1980).

[53]*Moore v. Smith*, 158 P.3d 562, 572 (Utah Ct. App. 2007).

[54]*Smith v. Frandsen*, 94 P.3d 919, 923 (Utah 2004) (quoting *Hermansen v. Tasulis*, 48 P.3d 235, 242 (Utah 2002) ("[I]n order to establish fraudulent concealment, 'a plaintiff  must

There is evidence to support summary judgment on this claim in Plaintiffs' favor. However, Defendant Taylor has presented a Declaration and a sur-reply which dispute many of Plaintiffs' allegations.  While Taylor's filings do not comply with local rule, as he is proceeding pro se the Court will consider them and construe them liberally.  Taylor's Declaration and other filings largely dispute the facts as presented by Plaintiffs.  Specifically, Taylor asserts that he: had no contact with Plaintiff during the relevant time, had no control over Smith, did not manage FFCF, and had no control over Plaintiffs' money.  These disputes preclude summary judgment on this claim.

### 2.      Breach of Fiduciary Duty

Whether a duty exists is a question of law to be determined by the court.[55]   A fiduciary relationship may be found "'when one party, having gained the trust and confidence of another exercises extraordinary influence over the other party.'"[56]

> There is no invariable rule which determines the existence of a fiduciary relationship, but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other.[57]

---

prove the following three elements: (1) the nondisclosed information is material, (2) the nondisclosed information is known to the party failing to disclose, and (3) there is a legal duty to communicate.'").

[55]*DeBry v. Valley Mortg. Co.*, 835 P.2d 1000, 1004 (Utah Ct. App. 1992).

[56]*State Bank of S. Utah*, 894 P.2d at 1275 (quoting *Von Hake*, 705 P.2d at 769).

[57]*First Sec. Bank of Utah N.A.*, 786 P.2d at 1333 (citation omitted).

As with Plaintiffs' fraud claim, the disputed issues of fact preclude summary judgment on this claim.

3.      Conversion

"A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[58]

For the same reasons set forth above, summary judgment is not appropriate on Plaintiffs' conversion claim. Defendant Taylor disputes that he had access to or control of Plaintiffs' money.

4.      Securities Claims

a.      Control Person and Material Aid Liability

15 U.S.C. § 78t(a) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Similarly, Utah Code Ann. § 61-2-22(4)(a) states:

Every person who directly or indirectly controls a seller or buyer liable under Subsection (1), every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase are also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could

---

[58] *Allred*, 328 P.2d at 728.

not have known, of the existence of the facts by reason of which the liability is alleged to exist.

To establish control person liability "the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person."[59]

There is evidence from which a finder of fact could find a primary violation of the securities laws and Defendant Taylor's denials do not alter this.  However, Defendant Taylor disputes that he controlled any primary violators.  Taylor asserts that Donnell's dealings were with Richard Smith and that Taylor did not control Smith.  Therefore, summary judgment is inappropriate.  Summary judgment is similarly inappropriate on Plaintiffs' material aid theory.

　　　　b.　　Primary Liability

Section 10(b) of the Exchange Act prohibits fraudulent conduct in connection with the offer, purchase, and sale of securities.[60]  In order to establish a violation of Section 10(b) and Rule 10b-5[61] thereunder, Plaintiffs must show: (1) a material misrepresentation or omission by the defendant; (2) scienter (3) a connection between the misrepresentation or omission and the purchase or sale of securities; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.[62]

---

[59]*Maher*, 144 F.3d at 1305.

[60]*See* 15 U.S.C. § 78j(b).

[61]17 C.F.R. § 240.10b-5.

[62]*Stoneridge Invest. Partners, LLC*, 552 U.S. at 157.

Utah Code Ann. § 61-1-1 states:

It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:
(1) employ any device, scheme, or artifice to defraud;
(2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
(3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

As with all of the other claims, there are disputed issues of fact concerning Taylor's alleged securities violations.

### d.    *Broker-Dealer Liability*

A person may sue a person who transacts business in Utah as a broker-dealer without a license.[63]  A broker-dealer "means a person engaged in the business of effecting transactions in securities for the account of others or for the person's own account."[64]

It is undisputed that Defendant Taylor did not have a license to act as a broker-dealer. Even considering Defendant Taylor's denial of many of the facts which make up Plaintiffs' Motion for Partial Summary Judgment, the evidence reflects that Defendant Taylor acted as a broker-dealer.  As he acted as a broker-dealer without a license, Plaintiffs are entitled to summary judgment on this claim.

---

[63]Utah Code Ann. §§ 61-1-22(1)(a) & -3(1).

[64]*Id.* § 61-1-13(1)(c).

26

## V.  CONCLUSION

It is therefore

ORDERED that the LBS Defendants' Motion for Summary Judgment (Docket No. 252) is GRANTED.  It is further

ORDERED that Plaintiffs' Motion for Partial Summary Judgment Against Roylance (Docket No. 286) is DENIED.  It is further

ORDERED that Summit and Roylance's Cross Motion for Summary Judgment (Docket Nos. 314) is GRANTED IN PART AND DENIED IN PART.  It is further

ORDERED that Plaintiffs' Motion for Partial Summary Judgment Against Roger Taylor (Docket No. 290) is GRANTED IN PART AND DENIED IN PART.  It is further

ORDERED that Defendants' Motion to Strike (Docket No. 312) is DENIED AS MOOT. It is further

ORDERED that Defendants' Motions for Joinder (Docket Nos. 317 & 345) are GRANTED.  It is further

ORDERED that Plaintiffs' Motion for Leave to File Memorandum in Opposition to Taylor Sur-Reply (Docket No. 349) is GRANTED.

Pursuant to the Court's standard practice, the Court will refer this matter to settlement by separate order.

DATED   September 8, 2011.

BY THE COURT:

_____

TED STEWART
United States District Judge